TUCKER ELLIS LLP
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll – SBN 100981
howard.kroll@tuckerellis.com
Dina Roumiantseva – SBN 300576
dina.roumiantseva@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiff,
Coachella Music Festival, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC,<br><br>             Plaintiff,<br><br>   v.<br><br>C.V. BREWING CO.,<br><br>             Defendant. | Case No. 5:24-cv-548<br><br>**COMPLAINT FOR (1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114; (2) FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125; (3) VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 & 17500; (4) CANCELLATION OF TRADEMARK REGISTRATION UNDER 15 U.S.C. § 1119** |

TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

Plaintiff Coachella Music Festival, LLC, by and through its attorneys Tucker Ellis LLP, files its complaint against Defendant for injunctive relief and damages as follows, with Plaintiff alleging upon actual knowledge with respect to itself and its own acts and on information and belief as to all other matters.

## INTRODUCTION

1.      Defendant, a local brewery, has adopted confusingly similar trade dress and logos in connection with its live entertainment events and alcoholic beverages in a brazen attempt to draw a false association with Plaintiff's Coachella Valley Music and Arts Festival ("Coachella" or "Festival"). The brewery has no sponsorship relationship, license, or affiliation with either Plaintiff or the Coachella festival, and despite repeated attempts to inform Defendant of non-infringing ways to use its company name—Coachella Valley Brewing Company—that would minimize a likelihood of consumer confusion, Defendant has continued to attempt to trade on Plaintiff's and Coachella's goodwill, particularly in connection with festivals and live events.

2.      Coachella is one of the most critically acclaimed music and art festivals in the world, with multiple bands, artists, food vendors, and stages. Held annually,[1] Coachella is a world-famous multi-day music and art festival which attracts hundreds of thousands of attendees to Southern California each April. Since its inception in 1999, Coachella has become a cultural phenomenon, with performances by some of the most high-profile performers in the music industry. A wide range of Coachella-branded apparel and merchandise is sold and advertised at Coachella, on the Coachella website, through the Coachella app, and on social media. Plaintiff also offers a large variety of related goods and services in connection with Coachella, and enters into high-profile sponsorship and partnership agreements, including with

---

[1]  Coachella was not held in person in 2020 and 2021 due to the COVID-19 pandemic; however, a YouTube Original documentary, "Coachella: 20 Years in the Desert" debuted online on April 10, 2020 and has been viewed over 6,793,000 times. Coachella returned in person in 2022.

TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

makers of alcoholic beverages.

3.      For years, Plaintiff has used distinctive trade dress in connection with Coachella comprising a Ferris wheel, silhouettes or images of palm trees, images of the mountains surrounding the Coachella Valley, grass, and a gradient background, all of which have become closely associated in the minds of the public with Plaintiff and its Festival due to extensive advertising and media coverage. Despite having no association with Plaintiff or its Coachella festival, Defendant is intentionally copying Plaintiff's trade dress which, when combined with Defendant's name, creates a false association between Defendant on the one hand and Plaintiff and its Coachella festival on the other hand, as demonstrated by a simple side-by-side comparison between the parties' respective promotional materials:

**Plaintiff's Advertising**



**Example of Defendant's Beer Label**



TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

**Plaintiff's 2019 Coachella Poster**



**Defendant's Comedy Fest Poster**



4.      Plaintiff has made several requests for Defendant to alter its advertising to prevent misleading consumers as to the source of Defendant's goods and services; however, Defendant has failed to do so and has instead gone so far as to register a trademark incorporating the misleading elements described above. As a result, Plaintiff has no choice but to bring this lawsuit against Defendant in United States District Court for trademark infringement, false designation of origin, unfair competition, and for cancellation of Defendant's trademark registration for its infringing logo. To be clear, Plaintiff does not object to Defendant hosting live entertainment, but Plaintiff does object to Defendant trading on Plaintiff's branding and trade dress to promote its live entertainment and beverages.

## THE PARTIES

5.      Plaintiff Coachella Music Festival, LLC is a Delaware limited liability company with its principal place of business in Los Angles, California.

6.      Defendant C.V. Brewing Co. aka CV Brewing Co. Inc. dba Coachella Valley Brewing Co. is a California corporation with its principal place of business

in Thousand Palms, California.

## JURISDICTION AND VENUE

7.     This case is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1114, 1125, *et seq.*, and California statutory and common law.

8.     This Court has subject matter jurisdiction over the federal claims in this complaint pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §§ 1338(a)-(b) (any act of Congress relating to trademarks or unfair competition with substantial and related claim under trademark laws).

9.     This Court has supplemental jurisdiction over the claims arising under California law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because the asserted state law claims are substantially related to the claims arising under the Lanham Act such that they form part of the same case or controversy.

10.    This Court has personal jurisdiction over Defendant because (1) Defendant conducts business within California and this judicial district; (2) the causes of action asserted in this complaint arise out of Defendant's contacts with California and this judicial district; (3) Defendant has caused tortious injury to Plaintiff in California and in this judicial district; and (4) Defendant has undertaken acts of trademark and service mark infringement, false designation of origin, unfair competition, and false advertising that were directed at California with knowledge that the brunt of injury would be felt by Plaintiff in California.

11.    Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## PLAINTIFF'S COACHELLA FESTIVAL, TRADEMARKS, AND SERVICE MARKS

12.    Plaintiff owns the intellectual property for Coachella, one of the

TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

country's premier music and arts festivals. Printouts of several news stories about Coachella are attached to this Complaint as **Exhibit 1**. The caption from one photograph accompanying a story from CNN reads, "[a]n aerial view taken from a helicopter on Sunday shows how big the [2011] festival is." *Id*.

13. Held annually at the Empire Polo Club in the beautiful Southern California desert, Coachella is one of the most critically acclaimed music festivals in the world. The entire festival site, which includes the festival grounds, on-site camping, parking and support operations, encompasses over 800 acres.

14. Coachella was first held in October 1999 and drew some 25,000 attendees into the California desert near Palm Springs. Over the years,[2] both Coachella's attendance and its prominence have grown. Attendance to Coachella, aggregated over the multi-day event, now totals nearly 750,000 attendees per year.

15. Coachella showcases some of the most groundbreaking artists from all genres of music along with a substantial selection of art installations from all over the world. Coachella attracts performances by unknown up and coming artists as well as some of the world's biggest mega-stars, including: AC/DC, Bad Bunny, Beyoncé, Beastie Boys, Bjork, BLACKPINK, Cardi B, Daft Punk, Doja Cat, Dr. Dre & Snoop Dogg, Guns N' Roses, Harry Styles, Jane's Addiction, Jay-Z, Lady Gaga, Lana Del Rey, Leonard Cohen, Madonna, Paul McCartney, Prince, Radiohead, Red Hot Chili Peppers, The Cure, The Weeknd, and Tyler, the Creator, to list just a few.

16. Coachella is about more than just music. Coachella has camping facilities for some 15,000 attendees (complete with a karaoke lounge and a general store), on-site lodges, hotel packages, and an amazing selection of food and beverages from a wide range of restaurants. Coachella also features extensive art exhibits, including sculptures and interactive and immersive art. The music, the

---

[2] Coachella was next held in April 2001 and has been held annually thereafter, except in 2020 and 2021, when the Festival was postponed due to the COVID-19 pandemic.

food, the art, and of course, the fellowship of other attendees, taken together, makes Coachella more than just a concert to attend—it truly is an experience.

17.     Coachella is widely recognized for its fashion and has developed a reputation as an unofficial kick-off to summer styles, attracting sponsorships from recognized and esteemed international brands such as BMW, Google Pixel, Neutrogena, YouTube, and more.

18.     Numerous approved beverage companies such as Absolut, Heineken, Aperol Spritz, White Claw, and Coca-Cola sponsor Coachella.

19.     Plaintiff is very selective concerning with whom it will enter into a sponsorship arrangement, and Coachella sponsorships are worth substantial sums due to the exposure they garner.

20.     Plaintiff owns and operates Coachella's website, available at www.coachella.com. This website has received over 20 million page views in 2019, hosting nearly 8.5 million users over nearly 12 million sessions. Between January 1, 2022 and May 1, 2022, the www.coachella.com website received over 15 million page views and hosted more than 6 million users in over 10 million sessions. Screen captures of Plaintiff's website, available at www.coachella.com, are attached to this Complaint as **Exhibit 2**.

21.     Plaintiff also produces a mobile app for Coachella for use on iPhone / iPad and Android devices. Screen captures of Plaintiff's app from iTunes and Google are attached to this Complaint as **Exhibit 3**.

22.     Plaintiff extensively promotes Coachella through a variety of media, including via the Internet on its website, available at www.coachella.com, and on numerous social media sites including YouTube, Facebook, Instagram, Pinterest, and Twitter. Screen captures of Coachella's Facebook, Twitter, and Instagram accounts are attached to this Complaint as **Exhibit 4**. As can be seen from Exhibit 4, Coachella's YouTube account has over 3.24 million subscribers; its Facebook account has over 2.4 million followers; its Twitter account has over 1 million

TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

followers; and its Instagram account has over 2.9 million followers.

23.    Plaintiff and its affiliates have invested substantial sums in media and related content to promote Coachella.

24.    An Internet search using the Google search engine for the word "Coachella" provides over 194 million hits. *See* Exhibit 4 at 65-68. A cursory review of the results shows nearly every hit in the first four pages of results was related to Plaintiff's festival; and the first search result was to Plaintiff's www.coachella.com website.

25.    Tracked online media impressions (advertisements) for the Coachella festival from April 8, 2022 to April 29, 2022 exceeded 111 billion impressions.

26.    In 2023, over 500 credentialed journalists, from print media, radio, television, and the Internet reported live from Coachella. The journalists represented media outlets such as Time, Billboard, and the BBC.

27.    Plaintiff owns the exclusive trademark and service mark rights to the distinctive COACHELLA and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trademarks and service marks, having used the marks in connection with the Festival and related goods and services since the first Coachella in 1999.

28.    Similarly, Plaintiff owns the exclusive trademark and service mark rights to the distinctive COACHELLA (stylized) trademark and service mark, having used the mark in connection with the Festival and related goods and services since the first Festival in 1999. The stylized mark is depicted below:

# COACHELLA

29.    Plaintiff owns trademark and service mark rights in the CHELLA mark, which has for many years been used by both the public and Plaintiff to identify the Coachella Valley Music and Arts Festival. "Chella" is used by the public to refer to

Coachella as an interchangeable nickname for Plaintiff's festival.[3] Plaintiff also hosts a smaller festival, *Chella Celebrando La Comunidad* (also known as "Chella"), in between the two weekends of Coachella. Plaintiff's Chella community festival further reinforces the consumer association of CHELLA as a mark with Plaintiff and its goods and services. Because the Chella event takes place between the two weekends of Coachella in the same area and is a complementary event to Coachella, often featuring some of the Coachella performers, consumers closely associate the CHELLA mark and any goods and services offered under the CHELLA mark with Plaintiff.

30.    As discussed above, Plaintiff uses numerous indicia associated with Coachella trade dress such as silhouettes or images of palm trees, images of the mountains surrounding the Coachella Valley, grass, and a gradient background with its Coachella Marks. Plaintiff owns exclusive trademark and service mark rights to its distinctive logo that incorporates a palm tree into the stylized "C" in its mark. The stylized mark ("Coachella Palm Logo") is depicted below:



31.    The COACHELLA, COACHELLA (stylized), CHELLA, and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL marks are collectively referred to in this complaint as the "COACHELLA Marks."

---

[3] *See Nat. Cable Tel. Ass'n v. Am. Cinema Editors, Inc.* 937 F.2d 1572 (Fed. Cir. 1991) ("Such public use by other inures to the claimant's benefit and, where this occurs, public use can reasonably be deemed use 'by' the party in the sense of a use on its behalf."); *Coca-Cola Co. v. Busch*, 44 F. Supp. 405, 410 (D. Pa. 1942) ("the abbreviation of the trademark which the public has used and adopted as designating the product of the [Coca-Cola Co.] is equally as much to be protected as the trademark itself."); *see also* 1 McCarthy on Trademarks and Unfair Competition § 7:18 (5th ed.).

TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

32.    Since 1999, Plaintiff's use of the COACHELLA Marks has been extensive, continuous, and substantially exclusive.

33.    Coachella and the COACHELLA Marks have been the subject of extensive newspaper articles, magazine articles, television, and Internet news stories. *See* Exhibit 1.

34.    Plaintiff has made, and continues to make, a substantial investment of time, effort and expense in the production and promotion of Coachella and the COACHELLA Marks.

35.    The COACHELLA Marks are unique and distinctive and, as such, designate a single source of origin.

36.    As a result of Plaintiff's efforts and use, the COACHELLA Marks have come to be recognized by the public and members of the trade as being associated exclusively with Plaintiff and the Coachella Valley Music and Arts Festival.

37.    Plaintiff expends substantial effort and expense to protect the COACHELLA Marks' distinctiveness in the marketplace. Plaintiff extensively polices unauthorized use of the COACHELLA Marks and has sent countless cease and desist letters to combat misuse or unauthorized use of the COACHELLA Marks.

38.    Plaintiff has filed numerous domain name complaints to remedy the registration or use of identical or confusingly similar Internet domain names.

39.    Based on Plaintiff's use, including the use described herein, Plaintiff owns extensive common law trademark rights in the COACHELLA Marks.

40.    In addition to their extensive common law rights, Plaintiff owns numerous United States registrations and applications for the COACHELLA Marks. Specifically, Plaintiff owns:

     a.    Registration No. 3,196,119 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

     b.    Registration No. 4,270,482 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

c.    Registration No. 3,196,129 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065.

d.    Registration No. 4,266,400 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065.

e.    Registration No. 5,235,905 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

f.    Registration No. 5,235,903 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065.

g.    Registration No. 3,196,128 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

h.    Registration No. 3,965,563 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

i.    Registration No. 4,008,651 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

j.    Registration No. 5,075,233 for CHELLA. This Registration is incontestable under 15 U.S.C. § 1065.

k.    Registration No. 5,520,063 for CHELLA.

l.    Registration No. 7,196,158 for 

The registration certificates for each of these registrations are attached to this complaint as **Exhibit 5**.

41.    Having been widely promoted to the general public, extensively used in interstate commerce, and having exclusively identified Plaintiff and its goods and services, the COACHELLA Marks symbolize the tremendous goodwill associated with Plaintiff and Plaintiff's Festival.

42.     The COACHELLA Marks are a property right of incalculable value.

43.     Similarly, Plaintiff owns common law trademark rights in the trade dress associated with the Festival. One key element of Complainant's trade dress is the Ferris wheel, which is closely associated with the festival and used by Plaintiff at its festival site and extensively used in advertisements, on posters, printed materials, and on Plaintiff's website. Exemplars of Plaintiff's advertising, printed materials, and posters, and screen captures of Plaintiff's website showing use of various indicia of Plaintiff's trade dress, including the Ferris wheel, are attached to this Complaint as **Exhibit 6**.

44.     Moreover, the Ferris wheel has also been featured in third-party media coverage, including by ABC News. Getty Images shows 305 results for "Coachella Ferris wheel," showcasing the iconic Ferris wheel at Coachella. Likewise, a Google image search for "Coachella Ferris wheel" results in hundreds of images of Plaintiff's iconic Ferris wheel, showing the strong connection between this landmark and the Festival. Images from exemplar third-party media outlets as well as screenshots of the search results from Getty Images and Google are attached collectively as **Exhibit 7**.

**DEFENDANT'S UNLAWFUL CONDUCT**

45.     Defendant is a brewery located in Thousand Palms, CA. In addition to brewing and serving beer, Defendant hosts live events including comedy shows and live entertainment events.

46.     Defendant's initial logo was the letters "CVB" on a blue highway sign. Later, Defendant re-designed its logo so that it displays the "COACHELLA" portion far more prominently than the "VALLEY BREWING CO." portion. When measured, the "COACHELLA" letters are approximately three times the height of "VALLEY BREWING CO.," making the lower portion difficult to discern,

12

especially in advertisements with a smaller logo or in lower resolution images. The logo ("Infringing Logo") design is as follows:



47.     Moreover, the Infringing Logo incorporates a Ferris wheel design, a key component of Plaintiff's trade dress. Significantly, there is no actual Ferris wheel present at Defendant's brewery, and inclusion of the Ferris wheel design is a blatant reference to Plaintiff's Festival and an attempt to associate Defendant with Plaintiff.

48.     Like the "COACHELLA" lettering, the Ferris wheel design is also significantly larger than the "VALLEY BREWING CO." portion of the logo. Further, the Ferris wheel is placed above the rest of the logo, and it stands alone as the logo's only graphical element. Both of these facts further highlight the Ferris wheel as a key component of Defendant's Infringing Logo.

49.     Defendant's tactic is effective at misleading consumers, particularly because beer and other beverages are sold at Plaintiff's Festival and because Plaintiff has entered into sponsorship agreements with beverage makers such as Absolut, Heineken, Aperol Spritz, White Claw, and Coca-Cola. Thus, consumers are likely to believe that Defendant's goods and services are produced by, sponsored by, affiliated with, or endorsed by Plaintiff.

50.     Defendant   has   obtained   a   federal   trademark   registration, Reg. No. 6,401,647, for the Infringing Logo in International Class 32 in connection with beer ("Defendant's Registration"). A copy of the registration is attached to this

13

Complaint as **Exhibit 8**.[4] Defendant's Registration should not have been granted by the United States Patent and Trademark Office ("USPTO") because the Infringing Logo falsely suggests a connection with Plaintiff, as described above, in violation of Lanham Act § 2(a), 15 U.S.C. § 1052(a). In addition, it appears that Defendant's Registration is void *ab initio* because, on information and belief, Defendant has never used the Infringing Logo on beer in interstate commerce, as described in more detail below. Accordingly, Plaintiff hereby seeks cancellation of Defendant's Registration pursuant to 15 U.S.C. § 1119.

51. Defendant also filed a trademark application for the word mark "MiChella" in connection with beer, Serial No. 97/428,975 (the "MiChella Application"), and has filed a Statement of Use showing the following label design with an added apostrophe (the "Mi'Chella Label"):



---

[4] Plaintiff notes that Defendant's Registration was issued in the name of "CV Brewing Co Inc" rather than "C.V. Brewing Co."; however, it appears these are one and the same entity.

TUCKER ELLIS LLP

Atlanta, GA ♦ Chicago, IL ♦ Cleveland, OH ♦ Columbus, OH ♦ Los Angeles, CA ♦ Morristown, NJ ♦ Orange County, CA ♦ San Francisco, CA ♦ St. Louis, MO ♦ Washington, DC

Copies of the MiChella Application and the Statement of Use with its corresponding specimen are attached to this Complaint as **Exhibit 9**.

52.     The Mi'Chella Label incorporates the Infringing Logo in the top third of the label together with palm trees, mountains, and gradient background, which are all indicia of Plaintiff's trade dress. Notably, "Mi" translates from Spanish to English as "my," which means that this applied-for mark translates to "My Chella." As can be seen from the specimen, the Mi'Chella Label incorporates other Spanish-language elements such as "Chavela" (a Mexican beer cocktail) and "Ojo Rojo" (Spanish for "Red Eye"), and thus consumers are likely to view "Mi" as a Spanish word. Accordingly, Defendant's use of "Mi'Chella" is likely to be interpreted as a play on the phrase "My Chella" and is likely to cause consumer confusion as to sponsorship or affiliation with Plaintiff, particularly given the prominent use of COACHELLA in the Infringing Logo above it.

53.     Defendant filed its trademark application for the Infringing Logo under Lanham Act § 1(a) on a use in commerce basis, meaning that Defendant declared in a sworn affidavit to the U.S. Patent and Trademark Office ("USPTO") that Defendant's mark was used in interstate commerce on the applied-for goods, namely, beer. Similarly, Defendant filed a Statement of Use for the MiChella Application, attesting that the mark was in use in interstate commerce on the applied-for goods, namely, beer.

54.     However, on information and belief, Defendant has never used the Infringing Logo or the MiChella or Mi'Chella marks on beer in interstate commerce.

55.     First, Defendant states on its website that its beer is only available within California. Screen captures of Defendant's website are attached to this Complaint as **Exhibit 10.**

56.     Second, it appears that Defendant never obtained a Certificate of Label Approval ("COLA") from the Alcohol and Tobacco Tax and Trade Bureau ("TTB") for the Infringing Logo or for the Mi'Chella Label. A COLA is legally required for

interstate sales of alcoholic beverages. A copy of the COLA search results for "Coachella," "MiChella" and "Mi'Chella" is attached as **Exhibit 11** (and there were no results found in the relevant timeframe for Defendant's products).

57.     If Defendant is selling its beer outside the State of California without a proper approved label from the TTB, then such sales would not be lawful sales in interstate commerce.

58.     Now, Defendant is using the Infringing Logo in connection with its goods together with other design elements confusingly similar to Plaintiff's trade dress, such as a Ferris wheel, silhouettes or images of palm trees (as used in the Coachella Palm Logo), images of mountains surrounding the Coachella Valley, and a gradient background. An example of Defendant's confusingly similar product label follows:



*See* Exhibit 10 at 116-117.

59.     Defendant is also using the Infringing Logo with design elements confusingly similar to Plaintiff's trade dress in connection with its live entertainment events, which include music and comedy, and such events are closely similar to or related to Plaintiff's core services, namely, music festivals. Further, Defendant has used and continues to use the Infringing Logo immediately adjacent to the term "Festival" or "Fest," exacerbating the likelihood that consumers will believe that

Defendant's offerings are produced by, authorized by, or connected with Plaintiff and/or Plaintiff's Festival. Examples of these misleading advertisements are attached to this Complaint as **Exhibit 12**.

60.    As can be seen from Exhibit 12 at page 127, Defendant has even used the exact same layout as Plaintiff's Coachella lineup posters in addition to indicia of Plaintiff's trade dress (palm trees and the gradient design) to advertise Defendant's comedy festival. These layout elements include (1) three blocks of text, one for each day of the three-day Festival, (2) separated by the dates of each day of the Festival, (3) with contrasting date flags, and (4) containing a list of each performer under the corresponding day of the artist's performance.[5]

61.    Defendant incorporates the Infringing Logo together with a guitar and musical notes on Defendant's Blonde Ale, both elements evocative of a music festival such as Coachella, in additional confusingly similar product label. *See* Exhibit 12 at 148.

62.    After several prior interactions wherein Plaintiff expressed concerns to Defendant, Plaintiff sent a formal and final cease and desist letter to Defendant on January 10, 2024. Despite Plaintiff's response stating that "we will deal with the complained of action(s)/postings," Defendant has willfully continued to use the Infringing Logo with the indicia associated with Plaintiff to advertise live events, including music and comedy, which are highly related or similar to the services offered by Plaintiff, as well as with Defendant's beer products. Copies of Plaintiff's cease and desist letter and Defendant's response are attached to this Complaint as **Exhibit 13**.

63.    Since Plaintiff's cease and desist letter, Defendant has continued to advertise additional music events with the Infringing Logo, such as the below:

---

[5] *Cf.* Exhibit 2 at 48, 51-53. In further imitation of Plaintiff, Defendant uses the phrases "DAY 1"; "DAY 2"; and "DAY 3" in its advertising material, just like Plaintiff uses "DAY ONE" and the like in its own promotional material. *See* Exhibit 12 at 147.

17

 

Exhibit 12 at 129-130.

64.     Because Defendant has created a false association between its live events and its products bearing the Infringing Logo and Plaintiff's Festival, Plaintiff's reputation and that of the Festival will be damaged to the extent anyone is confused by or disappointed with the quality or effectiveness of the events and products.

## HARM TO PLAINTIFF AND THE GENERAL PUBLIC

65.     A primary purpose of a trademark is to help consumers identify the source of goods or services. In contrast, Defendant's unauthorized use of the COACHELLA Marks and false association with Plaintiff and the Coachella festival through the use of similar trade dress creates a likelihood of confusion as to source, sponsorship, affiliation, and/or endorsement of Defendant and its goods and services with Plaintiff, despite the fact that no such relationship exists.

66.     Defendant's activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the COACHELLA Marks, particularly the goodwill and reputation associated therewith.

67.     Defendant's activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an inherent interest in being free from confusion, mistake, and deception.

18

# FIRST CAUSE OF ACTION

## (Trademark Infringement Under 15 U.S.C. § 1114)

68.     Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

69.     Defendant's use of the confusingly similar Infringing Logo and the MiChella and/or Mi'Chella marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant's goods or services are produced by, authorized by, sponsored by, approved by, or affiliated with Plaintiff.

70.     The above-described acts of Defendant constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Plaintiff to relief.

71.     Defendant has unfairly profited from the trademark infringement alleged, and Plaintiff is entitled to a disgorgement of Defendant's profits (if any) pursuant to 15 U.S.C. § 1117.

72.     By reason of Defendant's acts of trademark infringement, Plaintiff has suffered damage to the goodwill associated with the COACHELLA Marks, in amounts to be determined.

73.     Defendant's acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and its federally registered trademarks.

74.     Defendant's acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

75.     By reason of Defendant's acts and continued recalcitrant behavior, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

76.   By reason of Defendant's willful and repeated acts of trademark infringement and its recalcitrant behavior, Plaintiff is entitled to damages, and it is entitled to have those damages trebled under 15 U.S.C. § 1117.

77.   This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### SECOND CAUSE OF ACTION

### (Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a))

78.   Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

79.   Defendant's use of the confusingly similar Infringing Logo, indicia of Coachella's trade dress, and the MiChella and/or Mi'Chella marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant's goods or services are produced by, authorized by, sponsored by, approved by, or affiliated with Plaintiff.

80.   The above-described acts of Defendant constitute trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

81.   Defendant has unfairly profited from the trademark infringement alleged, and Plaintiff is entitled to a disgorgement of Defendant's profits (if any) pursuant to 15 U.S.C. § 1117.

82.   By reason of Defendant's acts of trademark infringement and false designation of origin, Plaintiff has suffered damage to the goodwill associated with the COACHELLA Marks, in amounts to be determined.

83.   Defendant's acts of trademark infringement and false designation of origin have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and its COACHELLA Marks.

84.     Defendant's acts of trademark infringement and false designation of origin have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

85.     By reason of Defendant's acts and continued recalcitrant behavior, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

86.     The above-described acts of Defendant were willful and repeated.

87.     By reason of Defendant's willful and repeated acts of trademark infringement and its recalcitrant behavior, Plaintiff is entitled to damages, and it is entitled to have those damages trebled under 15 U.S.C. § 1117.

88.     This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

**(Unfair or Deceptive Acts or Practices in Violation of Cal. Bus. & Prof. Code §§ 17200 & 17500 and California Common Law)**

89.     Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

90.     Defendant is in direct competition with Plaintiff.

91.     Defendant's use of the confusingly similar Infringing Logo, indicia of Coachella's trade dress, and the MiChella and/or Mi'Chella marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant's goods or services are produced by, authorized by, sponsored by, approved by, or affiliated with Plaintiff.

92.     Defendant's conduct as described herein constitutes unfair competition,

including unfair or fraudulent business acts or practices and misleading advertising, in violation of California Business and Professions Code §§ 17200 and 17500, and under the common law of the State of California.

93.     Pursuant to California Business and Professions Code § 17203, Defendant is required to disgorge and restore to Plaintiff all profits and property acquired by means of Defendant's unfair competition with Plaintiff.

94.     Due to Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of money damages that would afford Plaintiff adequate relief at law for Defendant's acts and continuing acts. Plaintiff's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened by Defendant. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to California Business and Professions Code § 17203.

95.     Defendant's conduct has been intentional and willful and in conscious disregard of Plaintiff's rights and, therefore, Plaintiff is entitled to exemplary or punitive damages under the statutory and common law of the State of California in an amount appropriate to punish Defendant and to make it an example of the community.

## **FOURTH CAUSE OF ACTION**
### **(Cancellation of Defendant's Registration)**

96.     Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

97.     The Infringing Logo shown in Reg. No. 6,401,647 falsely suggests a connection with Plaintiff and its COACHELLA Marks in violation of Lanham Act § 2(a), 15 U.S.C. § 1052(a).

98.     Reg. No. 6,401,647 is invalid because Defendant has never used the Infringing Logo on beer in interstate commerce and because Defendant made no

lawful use of the Infringing Logo in interstate commerce due to their failure to procure a legally required COLA.

99.    Reg. No. 6,401,647 was obtained via fraud because Defendant stated to the USPTO that the mark was in use in interstate commerce in its application despite explicitly offering its beer only for "shipment within California" and failing to obtain a legally required COLA for the Infringing Logo. The statement to the USPTO was made under oath and was made with full knowledge of the actual facts and thus with, on information and belief, intent to deceive the USPTO into issuing the registration. Further, this was a material misstatement as the USPTO relied on the statement in issuing the registration and would not have issued the registration had the USPTO know of the statement's falsity. Plaintiff is informed and believes, and thereon alleges, that Defendant's CEO, David V. Humphrey Jr., is a licensed California attorney experienced in the area of business and trademark litigation.

100.    Reg. No. 6,401,647 is void *ab initio* because, the underlying application was filed on a use in commerce basis, but there was no use—lawful or otherwise—of the mark on any of the goods or services identified in the application in interstate commerce prior to the filing of the application.

101.    Reg. No. 6,401,647 has not been registered for five or more years.

102.    Registration of the Infringing Logo is contrary to law, and Plaintiff is harmed by the registration.

103.    Accordingly, Plaintiff requests that Defendant's Registration, Reg. No. 6,401,647, be canceled pursuant to 15 U.S.C. § 1119, and all use of the Infringing Logo be ceased immediately.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.    That the Court enter a judgment against Defendant that Defendant has:

    a.  Infringed the rights of Plaintiff in the COACHELLA Marks, which have been federally registered, in violation of 15 U.S.C. § 1114(1);

23

b. Infringed the rights of Plaintiff in the COACHELLA Marks in violation of 15 U.S.C. § 1125(a);

c. Created a false association with Plaintiff and the COACHELLA Marks;

d. Engaged in unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.* and California common law; and

e. Engaged in untrue or misleading advertising in violation of California Business and Professions Code §§ 17500, *et seq.* and California common law.

2. That each of the above acts was willful.

3. That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendant and its agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

a. Engaging in any activity that infringes Plaintiff's trademark rights, including advertising, promoting, marketing, selling and offering for sale any goods or services in connection the COACHELLA Marks or any confusingly similar mark;

b. Engaging in any activity, including making any false or misleading statements regarding Coachella and including those that would create any association with Defendant or imply any kind of endorsement or sponsorship (or lack thereof), such as by using indicia of Coachella's trade dress, the Infringing Logo, or the MiChella and/or Mi'Chella marks;

c. Engaging in any unfair competition with Plaintiff;

d. Engaging in any deceptive acts, including untrue, false, or misleading advertising; and

e. Receiving any compensation, whether in money, in kind, or otherwise, for any of the acts proscribed in subparagraphs (a)-(d) above.

4.     That Plaintiff be awarded damages for Defendant's trademark infringement, false designation of origin, and unfair competition and that these damages be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

5.     That Plaintiff be awarded all profits resulting from Defendant's infringement of Plaintiff's rights and by means of Defendant's false representations and unfair competition with Plaintiff.

6.     That Plaintiff be awarded the costs of any corrective advertising it undertakes to dispel any confusion or false association created by Defendant's unlawful acts.

7.     That Defendant be ordered to account for and disgorge to Plaintiff all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions.

8.     That Plaintiff be awarded exemplary and/or punitive damages by reason of Defendant's unlawful actions.

9.     That Plaintiff be awarded pre- and post-judgment interest on all damages.

10.     That the Court award Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, California law, and any other applicable provision of law.

11.     That the Court award Plaintiff its costs of suit incurred herein.

12.     That the Court order that Defendant's Registration, Reg. No. 6,401,647, be canceled pursuant to 15 U.S.C. § 1119, and all use of the Infringing Logo be ceased immediately.

13.     That the Court order such other or further relief as the Court may deem just and proper.

25

DATED: March 14, 2024

Tucker Ellis LLP

By:  /s/Steven E. Lauridsen

Steven E. Lauridsen
David J. Steele
Howard A. Kroll
Dina Roumiantseva

*Attorneys for Plaintiff,*
*Coachella Music Festival, LLC*

26

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.


DATED: March 14, 2024                    Tucker Ellis LLP


By:    /s/Steven E. Lauriden

Steven E. Lauridsen
David J. Steele
Howard A. Kroll
Dina Roumiantseva

*Attorneys for Plaintiff,*
*Coachella Music Festival, LLC*